# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 20-60797-CIV-ALTMAN

**ORLANDO CASTILLO**,

    *Petitioner*,

*v.*

**RICKY D. DIXON, SECRETARY**,
**FLORIDA DEPARTMENT**
**OF CORRECTIONS**,

    *Respondent.*[1]

_____/

## ORDER

Our Petitioner, Orlando Castillo, has filed a Petition under 28 U.S.C. § 2254, challenging his state-court convictions for sexual battery on a child and lewd or lascivious exhibition. *See* Petition [ECF No. 1]. After careful review, we **DISMISS** the Petition as untimely.

### THE FACTS

The State of Florida charged Castillo by Information with six crimes: three counts of sexual battery on a child under the age of twelve (Counts 1, 2, and 3); one count of lewd or lascivious molestation (Count 4); one count of lewd or lascivious conduct (Count 5); and one count of lewd or lascivious exhibition (Count 6). *See* Information [ECF No. 11-1] at 9–11. Castillo took his case to trial, where a jury found him guilty of all six counts. *See* Jury Verdict [ECF No. 11-1] at 13–17. After the verdict, though, the trial judge granted (in part) Castillo's motion for a judgment of acquittal on Counts

---

[1] The original Respondent in this case, Mark S. Inch, retired from his position as Secretary of the Florida Department of Corrections. Accordingly, Former Secretary Inch's successor, Ricky D. Dixon, has been automatically substituted as the Respondent. *See* FED. R. CIV. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party.").

4 and 5. *See* Disposition Order [ECF No. 11-1] at 20. The trial court then adjudicated Castillo guilty of the remaining four counts and sentenced him to four concurrent terms of life in prison. *See* Judgment and Sentencing Orders [ECF No. 11-1] at 22–36.

Castillo appealed, *see* Direct Appeal Notice of Appeal [ECF No. 11-1] at 44, and advanced the following four arguments: (1) "[t]he trial court abused its discretion and violated Appellant's right to due process by failing to grant a mistrial once the [victim] revealed she improperly 'practiced' her testimony with the prosecutor and child advocate prior to testifying"; (2) "the trial counsel erred by failing to conduct a *Richardson*[2] hearing once defense counsel expressed that he had not been informed of the prosecutor coaching the [victim]"; (3) "[t]he trial court erred by permitting the State to introduce evidence [to the effect that Castillo] stated he intended to commit suicide"; and (4) the trial court erred by allowing the State's expert witness "to testify regarding the reliability of defense counsel's deposition with the [victim.]" Direct Appeal Initial Brief [ECF No. 11-1] at 76. On July 27, 2017, the Fourth DCA summarily affirmed Castillo's conviction and sentence in an unwritten opinion. *See Castillo v. State*, 228 So. 3d 568, 568 (Fla. 4th DCA 2017). On August 14, 2017,[3] Castillo filed a *pro se* "Motion for Rehearing, Clarification and Motion for Rehearing En Banc," *see* Motion for Rehearing [ECF No. 11-1] at 159–61, which the Fourth DCA denied on September 27, 2017, *see* Order Denying Motion for Rehearing [ECF No. 11-1] at 163.

On April 10, 2018, Castillo filed a state motion for postconviction relief under FLA. R. CRIM. P. 3.850, *see* Postconviction Motion [ECF No. 11-1] at 167–210, asserting the following three claims: (1) trial counsel was ineffective "in failing to contemporaneously object and move for mistrial when

---

[2] *See Richardson v. State*, 246 So. 2d 771 (Fla. 1971).
[3] "Under the 'prison mailbox rule,' a *pro se* prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing." *Williams v. McNeil*, 557 F.3d 1287, 1290 n.2 (11th Cir. 2009). "Absent evidence to the contrary, [courts] assume that a prisoner delivered a filing to prison authorities on the date that he signed it." *Jeffries v. United States*, 748 F.3d 1310, 1314 (11th Cir. 2014).

[the] child witness admitted her testimony was 'practiced' with [the] prosecutor and child advocate prior to testifying," *id.* at 179; (2) counsel was ineffective for "failing to request a *Richardson* hearing" on the same issue, *id.* at 194; and (3) counsel was ineffective for failing to "correctly object to the introduction into evidence of [a] 911 call," *id.* at 199. In its response to that Postconviction Motion, the State insisted that all three claims should be "summarily denied." State's Postconviction Response [ECF No. 11-1] at 231. On July 30, 2018, the state postconviction court "denied [Castillo's Postconviction Motion], for the reasons set forth in the State's Response[.]" Order Denying Postconviction Motion [ECF No. 11-1] at 247.

Castillo did *not* file a timely notice of appeal. *See* FLA. R. CRIM. P. 3.850(k) ("All final orders denying motions for postconviction relief shall include a statement that the defendant has the right to appeal within 30 days of the rendition of the order."). Instead, on June 10, 2019, Castillo filed a "Petition Seeking Belated Appeal" in the Fourth DCA under FLA. R. APP. P. 9.141(c). *See* Petition Seeking Belated Appeal [ECF No. 11-1] at 252–55; *see also Danny v. Sec'y, Fla. Dep't of Corr.*, 811 F.3d 1301, 1304 (11th Cir. 2016) ("A petition for relief under Rule 9.141(c) requests that a state court review the grounds for relieving the petitioner of his failure to timely seek an appeal." (cleaned up)). Castillo maintained that he "filed a notice of appeal on August 20, 2018," and that the notice was "given to prison officials on this very same day[.]" Petition Seeking Belated Appeal [ECF No. 11-1] at 253. When he didn't hear from the Fourth DCA for several months, Castillo sought the help of a jailhouse "legal assistant," after which he submitted a "Notice of Inquiry" with the state postconviction court, which "was answered on April 17, 2019." *Id.* Castillo—who is incarcerated at the Santa Rosa Correctional Institution—also alleges that "legal documents getting 'lost' in the mail" was a "very common occurrence." *Id.* On August 26, 2019, the Fourth DCA granted the Petition for Belated Appeal and allowed Castillo to appeal "the July 30, 2018 order denying petitioner's motion for postconviction relief[.]" Order Granting Petition for Belated Appeal [ECF No. 11-1] at 257.

3

In his Initial Brief challenging the state postconviction court's order, Castillo argued that "[t]he record portion attached to the courts [sic] order summarily denying grounds 1, 2, and 3 do not conclusively refute [Castillo's] factual allegations[.]" Postconviction Initial Brief [ECF No. 11-1] at 266. As redress, he asked that the Fourth DCA remand the case to the trial court for an evidentiary hearing. *Id.* On January 2, 2020, the Fourth DCA summarily affirmed the state postconviction court's decision in an unwritten opinion. *See Castillo v. State*, 289 So. 3d 479, 479 (Fla. 4th DCA 2020). On March 27, 2020, after the Fourth DCA denied Castillo's subsequent motion for rehearing, *see* Motion for Rehearing [ECF No. 11-1] at 279–84; Order Denying Motion for Rehearing [ECF No. 11-1] at 286, the Fourth DCA issued its mandate, *see* Postconviction Mandate [ECF No. 11-1] at 288. Castillo filed this federal Petition on April 13, 2020. *See generally* Petition. The Respondent filed its response in opposition on July 10, 2020. *See* Response to Order to Show Cause ("Response") [ECF No. 10].

## THE LAW

Under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), "a person in custody pursuant to the judgment of a State court" has one year to file a federal habeas petition. 28 U.S.C. § 2244(d)(1). That one-year period "runs from the latest of" the following dates:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)–(D).

AEDPA's limitations period can be tolled in at least two circumstances. *First*, the limitations period will be tolled for any period "during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending" before the state court. 28 U.S.C. § 2244(d)(2). This is what we call "statutory tolling." *Second*, a petitioner may avail himself of "equitable tolling" if he can show "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).

## ANALYSIS

As Castillo acknowledges, "the bone of contention here" is whether the Petition is timely. Reply [ECF No. 16] at 2. The AEDPA limitations period begins to run when the Supreme Court of the United States "affirms a conviction on the merits on direct review or denies a petition for writ of certiorari, or when the time for filing a certiorari petition expires." *Clay v. United States*, 537 U.S. 522, 527 (2003). Once a conviction becomes final, the "AEDPA clock" does not stop "until the individual seeking review files a state motion for post-conviction relief. Once the petitioner files a motion for post-conviction relief in state court, the AEDPA clock stops." *San Martin v. McNeil*, 633 F.3d 1257, 1266 (11th Cir. 2011) (citing 28 U.S.C. § 2244(d)(2)). The limitations period remains tolled so long as the postconviction motion is "pending" and does not resume until "the state's highest court issues its mandate disposing of the motion for post-conviction relief." *Id.*

Castillo concedes that there were two "periods" of untolled time before he filed this Petition. The "first period" ran from the day on which Castillo's conviction became final (December 26, 2017) until the day Castillo filed his Postconviction Motion (April 10, 2018). That's a total of 105 days. Why do we use these dates? Well, under the Supreme Court's rules, a petition for writ of certiorari is timely so long as it is filed "within 90 days after entry of judgment." SUP. CT. R. 13.1. Castillo filed a motion for rehearing in the Fourth DCA after it affirmed his convictions, *see* Motion for Rehearing [ECF No.

5

11-1] at 159–61, and the Eleventh Circuit has been clear that the 90-day period to file a petition for a writ of certiorari in the Supreme Court begins once a Florida appellate court denies a motion for rehearing, *see Lowe v. Fla. Dep't of Corr.*, 679 F. App'x 756, 758 (11th Cir. 2017) ("Lowe's conviction became final on March 10, 2010, 90 days after the denial of his motion for rehearing on direct appeal."). The Fourth DCA denied Castillo's motion for rehearing on September 27, 2017, *see* Order Denying Motion for Rehearing [ECF No. 11-1] at 163, and Castillo never sought a writ of certiorari from the U.S. Supreme Court[4]—so, his state-court conviction became final when the 90-day period "in which [Castillo] could have a filed a petition for writ of certiorari" expired (*i.e.*, December 26, 2017), *Chavers v. Sec'y, Fla. Dep't of Corr.*, 468 F.3d 1273, 1274–75 (11th Cir. 2006). The period then ran uninterrupted until Castillo filed his Postconviction Motion (April 10, 2018). Again, that's 105 days. So far, both parties are in complete agreement. *See* Response at 6–7; Reply at 2.

The "second period" ran from the day on which the Fourth DCA issued its mandate affirming the postconviction trial court's denial of Castillo's Postconviction Motion (March 27, 2020) until the day Castillo filed this Petition (April 13, 2020). *See San Martin*, 633 F.3d at 1266 ("The AEDPA clock resumes running when the state's highest court issues its mandate disposing of the motion for post-conviction relief.").[5] This second period thus ran for a total of 17 days. And, when we add the first

---

[4] Castillo never appealed to the Florida Supreme Court. But we omit from our timeline the window for seeking review from that court because it lacked jurisdiction to hear an appeal from the Fourth DCA's summary affirmance of Castillo's conviction. *See Dukes v. Sec'y, Fla. Dep't of Corrs.*, 2022 WL 832280, at *2 (11th Cir. Feb. 9, 2022) ("Notably, the Florida Supreme Court has held that it lacks jurisdiction over unelaborated per curiam decisions. Therefore, it appears that, in these circumstances, the [Florida District Court of Appeal] is the highest court in which a prisoner can seek review, so that the prisoner should receive the benefit of the 90-day period without seeking review from the state supreme court." (cleaned up)); *see also Tolbert v. Florida*, 796 F. App'x 704, 705 n.1 (11th Cir. 2020) ("Because the Fourth District Court of Appeal made its decision in a per curiam, unwritten affirmance, the Florida Supreme Court lacked discretionary review jurisdiction.").

[5] As we explained in note 4, *supra*, the Fourth DCA becomes the functional equivalent of the state's highest court in cases where the petitioner cannot seek review before the Florida Supreme Court—as, for instance, in this case where the supreme court lacked jurisdiction to review the Fourth DCA's summary affirmance.

period of untolled time (105 days) to this second period of untolled time (17 days), we get 122 days of untolled time.[6] Again, so far, the parties agree. *See* Response at 8; Reply at 3.

The parties disagree, however, on whether we should be considering a "third period" of untolled time. According to the Respondent, the limitations period began to run on August 29, 2018—the last day for Castillo to "appeal the denial" of his Postconviction Motion—and it didn't stop until June 3, 2019—the day Castillo "filed a petition for belated appeal[.]" Response at 7. Noting that this 279-day period—combined with the 122 total days of untolled time we just went over—equals 401 untolled days, the Respondent contends that Castillo missed his 365-day deadline by some 36 days. Castillo, unsurprisingly, disagrees. In his view, no untolled time passed between the trial court's denial of his Postconviction Motion on July 30, 2018, and the Fourth DCA's mandate affirming that denial on March 27, 2020, because he "filed the appeal and notice timely but somehow it was lost by prison officials or the U.S. Mail thus he had to file a belated appeal concerning the Rule 3.850 appeal that was successful due to no fault of his own." Reply at 2 (errors in original). Put another way, Castillo believes that the Fourth DCA's decision to grant his Petition for Belated Appeal had the retroactive effect of tolling all the time that had passed between the trial court's denial of his Postconviction Motion (July 30, 2018) and the Fourth DCA's mandate affirming that denial (March 27, 2020).

It's a clever argument. Unfortunately for Castillo, the law is not on his side. In *Moore v. Crosby*, 321 F.3d 1377 (11th Cir. 2003), the Eleventh Circuit was asked to decide "what effect the granting of a motion for belated appeal from the denial of a timely state application would have on calculating

---

[6] We recognize that our calculation differs from both Castillo's (124 days) and the Respondent's (125 days). *See* Response at 8; Reply at 3. That's *partly* because, consistent with the Federal Rules of Civil Procedure, we calculated the applicable time periods by "exclud[ing] the day of the event which triggers the period," and then counted every day in between, up to and including "the last day of the period." FED. R. CIV. P. 6(a)(1); *accord San Martin*, 633 F.3d at 1266. Either way, given that Castillo's calculation reflects *more* untolled time than ours does, Castillo loses whichever computation you choose.

7

how long that state application was pending under section 2244(d)(2)," *id.* at 1380. In rejecting the habeas petitioner's position, the court adopted the reasoning of the Fifth Circuit, which had held that, "after the appeal period lapsed, an application ceased to be pending, but that a subsequent properly filed application entitled the petitioner to additional tolling *beginning at the time of the proper filing.*" *Id.* (emphasis added) (citing *Melancon v. Kaylo*, 259 F.3d 401, 407 (5th Cir. 2001)); *see also Mashburn v. Comm'r, Ala. Dep't of Corr.*, 713 F. App'x 832, 837 n.4 (11th Cir. 2017) (citing out-of-circuit cases for the proposition that "a belated or out-of-time appeal of a state post-conviction proceeding cannot revive an expired AEDPA clock"). As support for this holding, the Eleventh Circuit noted that "'retroactively' tolling periods in which the petitioner is not attempting to exhaust state remedies" would go against the plain language of AEDPA and added that "[s]uch an interpretation would permit a petitioner to avoid the preclusive effect of a time-bar ruling by allowing a belated appeal beyond the one-year statute of limitations." *Moore*, 321 F.3d at 1381; *see also Williams v. Crist*, 230 F. App'x 861, 867 (11th Cir. 2006) ("Further, the filing of a belated appeal motion outside the limitations period, even if granted by the state court, cannot erase the time period when nothing was pending before the state court."). As the Respondent points out, in short, the limitations period began to run on August 29, 2018, when Castillo's 30-day window to appeal the trial court's July 30, 2018 denial of his Postconviction Motion expired. *See Williams*, 230 F. App'x at 864 ("Williams's AEDPA clock was tolled from May 13, 1998 (3.850 motion filed) through February 17, 1999 (denial of 3.850 motion) and through March 19, 1999 (30 days for appeal)."). And, since no "properly filed application for State post-conviction or other collateral review" was pending before the state court for the next 279 days, 28 U.S.C. § 2244(d)(2), the limitations period continued to run unabated until Castillo filed his Petition for Belated Appeal on June 3, 2019. That 279-day period—when added to the 122 days of untolled time on which the parties agree—renders Castillo's federal habeas petition untimely.

Anticipating this result, Castillo asks us to waive AEDPA's time-bar because (he says) he's "actually innocent" of the challenged offenses. *See* Petition at 13–14 ("Petitioner is actually innocent of all charges thus, these claims must be ruled on their merits to prevent a fundamental miscarriage of justice."); Reply at 3 ("Also, Petitioner is actually innocent."). Actual innocence may "serve as a gateway to consideration of constitutional claims time-barred under AEDPA's one-year limitations period." *Rozzelle v. Sec'y, Fla. Dep't of Corr.*, 672 F.3d 1000, 1011 (11th Cir. 2012). But, to prevail on an actual-innocence claim, a petitioner must satisfy two elements. *First*, he must "support the actual innocence claim 'with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.'" *Arthur v. Allen*, 452 F.3d 1234, 1245 (11th Cir. 2006) (quoting *Schlup v. Delo*, 513 U.S. 298, 324 (1995)). In this context, "[a]ctual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998) (cleaned up). *Second*, the petitioner must show "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt in light of the new evidence." *Rozzelle*, 672 F.3d at 1011 (cleaned up).

This standard is extremely "demanding" and applies only in the most "extraordinary cases." *Id.* at 1011–12. In fact, the Eleventh Circuit has gone *decades* without finding a *single* petitioner who has met both elements of the actual-innocence test. *See Johnson v. Fla. Dep't of Corr.*, 513 F.3d 1328, 1333 (11th Cir. 2008) ("To date, this Court has avoided this constitutional issue because no time-barred petitioner has made the requisite actual-innocence showing."). Castillo's actual-innocence claim fails at the first step because he's identified *no evidence* (let alone "new reliable evidence" that "was not presented at trial") to support his conclusory claims of innocence. *Arthur*, 452 F.3d at 1245. Since it was indisputably his burden to establish his factual innocence, we needn't go any further. *See Schlup*, 513 U.S. at 327 ("[T]he petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence.").

9

There is (it's true) another exception to the time-bar: equitable tolling. But equitable tolling is also an "extraordinary" exception to AEDPA's limitations period, and it requires a petitioner to show that he "has been pursuing his rights diligently" and that "some extraordinary circumstance stood in his way and prevented timely filing." *Cadet v. Fla. Dep't of Corr.*, 853 F.3d 1216, 1221 (11th Cir. 2017) (quoting *Holland*, 560 U.S. at 649). To begin with, Castillo has never even suggested that equitable tolling saves his claim, which is reason enough to stop here. *See Jones v. United States*, 304 F.3d 1035, 1040 (11th Cir. 2002) ("The *petitioner* has the burden of proving entitlement to equitable tolling by showing that extraordinary circumstances that were beyond his control and unavoidable even with diligence prevented filing the petition on time." (cleaned up & emphasis in original)); *United States v. Campbell*, 26 F.4th 860, 873 (11th Cir. 2022) ("[F]ailure to raise an issue in an initial brief . . . should be treated as a forfeiture of the issue, and therefore the issue may be raised by the court *sua sponte* [only] in extraordinary circumstances.").

Even if he hadn't forfeited this argument, though, it would've failed. Castillo claims that his notice of appeal was lost in the mail. *See* Reply at 2 ("Petitioner filed the appeal and notice timely but somehow it was lost by prison officials or the U.S. Mail thus he had to file a belated appeal concerning the Rule 3.850 appeal[.]"). On this issue, Castillo's Petition for Belated Appeal provides much more detail and alleges the following: (1) "Petitioner filed a notice of appeal on August 20, 2018. This notice was given to prison officials on this very same day"; (2) after several "months of not hearing from [the Fourth DCA] concerning a ruling, the Petitioner sought help again at the Institutional Law Library"—help Castillo sought out because he's not a native English speaker and "needs legal assistance in all aspects of accessing the courts"; (3) the "Legal Assistant" who was helping Castillo "transferred to another job"; (4) after "waiting patiently" for an unspecified time, another assistant helped Castillo file a "notice of inquiry" with the state postconviction court; (5) the state postconviction court answered

10

the notice of inquiry on April 17, 2019; and (6) Castillo handed his Petition for Belated Appeal to prison officials on June 3, 2019. *See* Petition Seeking Belated Appeal [ECF No. 11-1] at 252–53.

This sequence of events—unfortunate as it may be—doesn't entitle Castillo to equitable tolling. It's true that lost mail may, in extraordinary circumstances, trigger equitable tolling. *See, e.g.*, *Redmond v. United States*, 2016 WL 9330497, at *5 (E.D. Tenn. Mar. 7, 2016) ("[T]here are situations where [lost mail] may qualify as an extraordinary circumstanc[e] that prevent[s] timely filing."). But Castillo cannot show extraordinary circumstances here because his failure to submit a timely appeal wasn't, even on his facts, solely attributable to the mail mishap. Castillo admits that he waited several "months" before he decided to investigate the status of his appeal. Petition Seeking Belated Appeal [ECF No. 11-1] at 253. Then, after receiving a response from the trial court to his notice of inquiry, Castillo waited almost *two more months* before filing his Petition for Belated Appeal. *Id.* And, while Castillo's lack of fluency in English may have contributed to some part of this delay, it cannot excuse all of this 279-day period. *See, e.g.*, *Johnson v. United States*, 2010 WL 2490694, at *4 (E.D. Wis. June 17, 2010) ("While certainly lost mail is beyond the litigant's control, it does not justify equitably tolling the applicable deadline for two hundred and seventy-one days. If Johnson had exercised any diligence as to his supposed June 10, 2009 filing, he would have long ago discovered that said motion was never received by the court."); *Estupian v. United States*, 2009 WL 1587161, at *2 (M.D. Fla. June 5, 2009) ("Petitioner's inability to communicate in English and his lack of legal knowledge are not considered extraordinary circumstances in the context of equitable tolling.").

One last thing on equitable tolling. In his Petition for Belated Appeal, Castillo acknowledged that it "is a very common occurrence" for documents to get lost in the mail at the Santa Rosa Correctional Institution—where, at the time (as now), he was housed. Petition Seeking Belated Appeal [ECF No. 11-1] at 253. Castillo reiterates this point in his Reply. *See* Reply at 2–3 ("[Lost mail] has happened a lot in Santa Rosa County and can be looked up, lost mail made the local news and was

11

investigated."). Since Castillo understood at the time that, at his facility, documents were often lost in the mail, he had an obligation to follow up on his petition to make sure that it had reached its destination. *See Everett v. Barrow*, 861 F. Supp. 2d 1373, 1376 (S.D. Ga. 2012) ("Judicial systems are operated by human beings who err. Defendants know this. They thus must make a reasonable inquiry, even if told they may rest easy and do nothing, where a large amount of time marches by and nothing happens in their cases." (cleaned up)). Having failed (despite this understanding) to exercise reasonable diligence in following up on his petition, Castillo cannot establish the kinds of extraordinary circumstances that would justify equitable tolling.

To summarize, 401 days of untolled time passed between the day on which Castillo's conviction became final (December 26, 2017) and the day on which he filed this federal Petition (April 13, 2020). That's 105 days between the day the conviction became final (December 26, 2017) and the day Castillo filed his Postconviction Motion (April 10, 2018); 279 days between the expiration of Castillo's deadline to appeal the denial of his Postconviction Motion (August 29, 2018) and the day Castillo filed his Petition for Belated Appeal (June 3, 2019); and 17 days between the issuance of the Fourth DCA's mandate affirming the denial of his Postconviction Motion (March 27, 2020) and Castillo's submission of this Petition (April 13, 2020). Since more than 365 untolled days passed between the day Castillo's "judgment became final by the conclusion of direct review" and the filing of this Petition, 28 U.S.C. § 2244(d)(1)(A), we **DISMISS** the Petition as untimely.

### EVIDENTIARY HEARING

And we don't need a hearing to develop the factual record in this case. "[A] district court need not hold a hearing if the allegations are patently frivolous, based upon unsupported generalizations, or affirmatively contradicted by the record." *Winthrop-Redin v. United States*, 767 F.3d 1210, 1216 (11th Cir. 2014) (cleaned up). Since the Petition is plainly untimely, a hearing would be a waste of judicial resources.

## CERTIFICATE OF APPEALABILITY

A Certificate of Appealability ("COA") is appropriate only when the movant makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To deserve a COA, therefore, the movant must show that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "Where a district court has disposed of claims . . . on procedural grounds, a COA will be granted only if the court concludes that 'jurists of reason' would find it debatable both 'whether the petition states a valid claim of the denial of a constitutional right' and 'whether the district court was correct in its procedural ruling.'" *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir. 2001) (quoting *Franklin v. Hightower*, 215 F.3d 1196, 1199 (11th Cir. 2000)). Because no jurists of reason would debate the correctness of our procedural ruling, we **DENY** any request for a COA.

\*\*\*

Having carefully reviewed the record and the governing law, we hereby **ORDER AND ADJUDGE** that the Petition is **DISMISSED** as untimely. A COA is **DENIED**, any request for an evidentiary hearing is **DENIED**, and all other pending motions are **DENIED** as moot. The Clerk shall **CLOSE** this case.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 8th day of July 2022.

_____
**ROY K. ALTMAN
UNITED STATES DISTRICT JUDGE**

cc:   Orlando Castillo, *pro se*
      counsel of record